## fIN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| DAVID LEPPEK, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | Civil Action No. _____ |
| PARKING COMPANY OF AMERICA, LLC, PARKING COMPANY OF AMERICA MANAGEMENT LLC, PARKING COMPANY OF AMERICA-DALLAS, INC., PARKING COMPANY OF AMERICA-FORTH WORTH, INC., PARKING SYSTEMS OF AMERICA, INC., PARKING SYSTEMS OF AMERICA I, L.P., AND PARKING REVENUE RECOVERY SERVICES, INC., | § § § § § § § § § § § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |

---

## PLAINTIFF'S CLASS ACTION COMPLAINT

---

### I. SUMMARY OF ACTION

1.      David Leppek, individually and on behalf of the Class of all other persons similarly situated, files this Class Action Complaint against Parking Company of America, Inc., Parking Company of America Management, LLC, Parking Company of America-Dallas, Inc., Parking Company of America-Fort Worth, Inc. (collectively, "PCA"), Parking Systems of America, Inc., Parking Systems of America I, L.P., (collectively, "PSA"), and Parking Revenue Recovery Services, Inc. ("PRRS"), and alleges as follows:

## II. INTRODUCTION

2.     PCA and PSA are interrelated[1] national parking and transportation management leaders in the parking industry. Their websites speak to a technology-driven approach to provide seamless parking solutions and maximize revenue for facility owners. In actuality, PCA and PSA created and utilize payment and enforcement systems that are intentionally designed to confuse and deceive consumers into paying unauthorized fines and fees.

3.     PCA's and PSA's business model entails duping consumers into wrongfully paying illegal fines and convenience fees allegedly incurred while parking at private parking facilities owned or managed by PCA or PSA.

4.     PCA touts itself as "[a] recognized leader and innovator" in the parking industry who "consistently strives to offer exceptional services based on dedication, integrity, and commitment."[2] PCA refers to its use of "technology" and "Automated Parking Equipment" to manage "revenue-generating streams."[3]

5.     PSA says it "is leading the industry by implementing cutting-edge state-of-the-art technology…"[4], has "50 years" of experience "maximizing revenue for parking assets"[5], and "continues to develop new and innovative value-added solutions for its clients while also pursuing

---

[1]  The facility at which Plaintiff Leppek parked and was fined bears PCA signage but is only listed on the PSA website. The PSA website also displays the PCA logo. Ex. A (*Home*, PARKING SYSTEMS OF AMERICA, https://parkingsystemsofamerica.com/ (last visited Mar. 26, 2025)).

[2] Ex. B (*Home*, PARKING COMPANY OF AMERICA, https://www.parkpca.com/ (last visited Mar. 26, 2025)).

[3] Ex. C (*Our Story*, PARKING COMPANY OF AMERICA, https://www.parkpca.com/about-us (last visited Mar. 26, 2025)); Ex. D (*Parking Management*, PARKING COMPANY OF AMERICA, https://www.parkpca.com/parking-management (last visited Mar. 26, 2025)).

[4] Ex. E (*Our Technology*, PARKING SYSTEMS OF AMERICA, https://parkingsystemsofamerica.com/technology/ (last visited Mar. 26, 2025)).

[5] Ex. A, (*Home*, PARKING SYSTEMS OF AMERICA).

new avenues of growth. We use state-of-the-art digital meter parking hardware and software that allows for trending real-time live reporting and dynamic price change implementations…."[6]

6.      On information and belief, PCA and PSA own, manage, or otherwise control parking facilities throughout the United States, or partner with entities and persons that own, manage, or otherwise control parking facilities throughout the United States. According to its website, PSA has over 400 parking facilities in six states, over 150,000 parking stalls, employs over 800 people, and serves nearly 20,000 customers per day.[7]

7.      PCA and PSA use monitoring technology like license plate readers ("LPR") to identify and track vehicles entering and leaving facilities they own or manage so they can identify customers who purportedly fail to pay the required parking charge or who, like Plaintiff, purportedly overstay their allotted time.

8.      PRRS is "a leading provider of fully integrated parking compliance, customer service/dispute processing, and access monitoring services."[8] PRRS is "one of the first companies to automate parking monitoring and compliance programs using a software-based solutions called ARC [Automated Recognition and Compliance System],"[9] which "enables 24-hour real time monitoring of facilities using free flow traffic methods."[10] PRRS does so pursuant to "the 5 foundations of our compliance program," which include (1) parking lot monitoring (manual and

---

[6] Ex. F (*About Us*, PARKING SYSTEMS OF AMERICA, https://parkingsystemsofamerica.com/about/ (last visited Mar. 26, 2025)).
[7] Ex. A (*Home*, PARKING SYSTEMS OF AMERICA); Ex. F (*About Us*, PARKING SYSTEMS OF AMERICA).
[8]      Ex.      G      (*Company*,      PARKING      REVENUE      RECOVERY      SERVICES, https://prrsparking.com/company.html (last visited Mar. 26, 2025)).
[9] *Id.*
[10]      Ex.      H      (*Compliance      Programs*,      PARKING      REVENUE      RECOVERY      SERVICES, https://prrsparking.com/complianceprograms.html (last visited Mar. 26, 2025)).

fixed LPR) and enforcement; (2) notice and data management; (3) notice dispute processing; (4) payment processing; and (5) real time analytics and reporting.[11] PRRS provides these services to over 800 parking locations across North America, issuing **over 100,000 parking notices every month**.[12]

9.       On information and belief, PCA and PSA contract with PRRS to provide such monitoring technology and enforcement services to their parking facilities like the one used by Plaintiff.

10.       PRRS, pursuant to its relationship with PCA and PSA, uses LPR technology to determine when a vehicle exits the parking facility and confirms whether adequate payment has been made. If someone fails to pay the parking charge or overstays their allotted time, PRRS mails a form notice of parking violation ("parking notice") to the vehicle owner, demanding payment of a fine (collectively, the "parking notice scheme"). The fine is multiple times the parking charge, is undisclosed prior to being levied, is arbitrary and outrageous in amount, and is illegal.

11.       In Plaintiff Leppek's case, he paid a fare of $9 and a "transaction fee" of $1.40 for one hour and fourteen minutes of parking time, but the fine was $87 plus a $5 "convenience fee."[13] PCA's, PSA's, and/or PRRS's fine was **960% the alleged parking fee**, before the convenience fee he had to pay to pay the fine. All for overstaying his pre-paid fare by 22 minutes.

12.       As part of PRRS's five-part foundational program: "To ensure the highest recovery rate, … unresolved notices (violations not paid, settled or dismissed) are transferred to our Attorney Collection Program to encourage payment. We obtain the violators' names and addresses

---

[11] Ex. I (*Services*, Parking Revenue Recovery Services, https://prrsparking.com/services.html (last visited Mar. 26, 2025)).
[12] Ex. G (*Company*, PARKING REVENUE RECOVERY SERVICES).
[13] Exs. K & L (Kelley Letters).

and send collection letters to the violators, in escalating severity, to obtain payment from the violators. With the operator client's consent, additional collection actions may be employed (e.g., legal action and booting or towing the violator's vehicle)."[14]

13.    In Plaintiff Leppek's case, PRRS employed "Daniel B. Kelley Attorney at Law" to send numerous escalating notices demanding payment of the fine. At all times, Daniel Kelley acted as PRRS's agent. Kelley has stated that PRRS is his only client.[15]

14.    In the various form notices, PCA, PSA, and/or PRRS threaten to tow and/or boot a consumer's vehicle or subject the consumer to further potential legal actions if the fine is not paid. By the time consumers receive a notice, their vehicle has already left the PCA and/or PSA facility, and Defendants' threats of "booting and/or towing" are plainly false, misleading, and illegal. The notice also threatens consumers with "report[ing] this debt to one or more of the credit bureaus after the expiration of thirty-day dispute period," which "may have a negative effect on you, including but not limited to your credit rating and credit score."[16]

15.    PRRS does not have legal authority to tow and/or boot a consumer's vehicle outside of PCA's and PSA's facilities, nor to levy and collect exorbitant fines on behalf of PCA and/or PSA; PCA's, PSA's, and PRRS's parking notice scheme is unlawful, and violates the Federal Fair Debt Collection Practices Act ("FDCPA," 15 U.S.C. §§ 1692–1692p); the Texas Fair Debt Collection Practices Act ("TFDCPA," Tex. Fin. Code §§ 392.001–392.404); and the Texas Deceptive Trade Practices Act ("DTPA," Tex. Bus. & Com. Code §§ 17.41–17.63).

---

[14] Ex. I (*Services*, PARKING REVENUE RECOVERY SERVICES).
[15] Ex. J (Adolfo Pesquera, *Lawyer as Litigant as Late Fees Take Spotlight in Class Action*, TEXAS LAWYER (Dec. 4, 2024), https://www.law.com/texaslawyer/2024/12/04/lawyer-as-litigant-as-late-fees-take-spotlight-in-class-action-/?slreturn=20250320-45517.
[16] Ex. K (First Kelley Letter).

16.     As a result of the parking notice scheme, a significant number of PCA's and PSA's customers who have parked at a PCA- or PSA-managed facility that contracts with PRRS have received notices allegedly imposing fines and falsely threatening other actions that PSA, PCA, and/or PRRS cannot lawfully perform. PCA's, PSA's, and PRRS's intentional scheme coerces consumers into paying these illegal fines.

### III. PARTIES

17.     Plaintiff David Leppek is, and at all relevant times has been, a resident and citizen of Flower Mound, Texas. Plaintiff received a notice from PRRS, pursuant to its relationship with PCA and PSA, imposing a fine, and he paid the fine in response thereto.

18.     Defendant Parking Company of America, Inc. is a corporation with its principal place of business at 4011 Commerce Street, Dallas, Texas 75226. Parking Company of America, Inc. may be served with process in Texas through its registered agent, Thad F. Baker, at 4011 Commerce Street, Dallas, Texas 75226. Parking Company of America, Inc. includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

19.     Defendant Parking Company of America Management, LLC is a limited liability company with its principal place of business at 3165 Garfield Avenue, Commerce, California, 90040. Parking Company of America Management, LLC may be served with process in Texas through its registered agent, National Registered Agents, Inc., at 1614 Sidney Baker Street, Kerrville, Texas 78028. Parking Company of America Management, LLC includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

20.     Defendant Parking Company of America-Dallas, Inc. is a corporation with its principal place of business at 4011 Commerce Street, Dallas, Texas 75226. Parking Company of

America-Dallas, Inc. may be served with process in Texas through its registered agent, Thad F. Baker, at 4011 Commerce Street, Dallas, Texas 75226. Parking Company of America-Dallas, Inc. includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

21.    Defendant Parking Company of America-Fort Worth, Inc. is a corporation with its principal place of business at 4220 Gurley Avenue, Dallas, Texas 75223. Parking Company of America-Fort Worth, Inc. may be served with process in Texas through its registered agent, Thad F. Baker, at 4011 Commerce Street, Dallas, Texas 75226. Parking Company of America-Fort Worth, Inc. includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

22.    Defendant Parking Systems of America, Inc., is a corporation with its principal place of business at 4011 Commerce Street, Dallas, Texas 75226. Parking Systems of America, Inc. may be served with process in Texas through its registered agent, Thad F. Baker, at 4011 Commerce Street, Dallas, Texas 75226. Parking Systems of America, Inc. includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

23.    Defendant Parking Systems of America I, L.P. is a limited corporation with its principal place of business at 4011 Commerce Street, Dallas, Texas 75226. Defendant Parking Systems of America I, L.P. may be served with process in Texas through its registered agent, Thad F. Baker, at 4011 Commerce Street, Dallas, Texas 75226. Defendant Parking Systems of America I, L.P. includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all

those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

24.     Defendant Parking Revenue Recovery Services, Inc. is a Colorado corporation. Its principal place of business is 12381 E. Cornell Avenue, Aurora, Colorado 80014-3323. PRRS may be served with process in Texas through its registered agent, InCorp Services, Inc. at 815 Brazos St., Suite 500, Austin, Texas 78701. PRRS includes any presently unknown predecessors, successors, subsidiaries, affiliates, and all those benefiting from the parking notice scheme, which may be legally liable whether by merger, assignment, or otherwise.

## IV. JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one member of the class of plaintiffs and one defendant are citizens of different States. This Court has subject matter jurisdiction over Plaintiff's FDCPA claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). This Court may exercise supplemental jurisdiction over Plaintiff's state-law claims under the TFDCPA and DTPA pursuant to 28 U.S.C. § 1367(a).

26.     This Court has specific personal jurisdiction over the Parking Company of America entities ("PCA") because they conduct business in Texas, have purposefully availed themselves of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully seeking to collect fines within the districts of Texas and

throughout the United States with the expectation and intent that consumers would pay them, and have illegally collected and profited from these fines.

27.    This Court has specific personal jurisdiction over the Parking Systems of America entities ("PSA") because they conduct business in Texas, have purposefully availed themselves of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully seeking to collect fines within the districts of Texas and throughout the United States with the expectation and intent that consumers would pay them, and have illegally collected and profited from these fines.

28.    This Court has specific personal jurisdiction over PRRS because it conducts business in Texas, has purposefully availed itself of the benefits and protections of Texas by continuously and systematically conducting substantial business in this judicial district, directing advertising and marketing materials to districts within Texas, and intentionally and purposefully seeking to collect fines within the districts of Texas and throughout the United States with the expectation and intent that consumers would pay them, and has illegally collected and profited from these fines.

29.    Venue is proper in this Court, as it is the district where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b)(2). Defendants mailed all violation notices with the intent to collect the fine to Plaintiff Leppek's residence in Denton County, which is in the Eastern District of Texas.

## V. CLASS ACTION ALLEGATIONS

30.    Plaintiff Leppek brings this action as a class action and as the representative of the Federal Class and Texas Subclass defined below. This action is brought and may be maintained under Federal Rule of Civil Procedure 23.

31.     Plaintiff brings this action on behalf of himself and all other individuals who meet the following class and subclass definitions:

a.  **Federal Claims Class ("Federal Class")**:

i.   All non-excluded persons or entities, being citizens of the United States who have received a notice from PCA, PSA, and/or PRRS regarding a PCA- and/or PSA-managed parking facility and paid any fine to PCA, PSA, and/or PRRS.

ii.  Excluded from the Federal Class are: (1) agencies, departments, or instrumentalities of the United States of America, (2) the State of Texas, (3) PCA, its affiliates, predecessors, and employees, officers, and directors, (4) PSA, its affiliates, predecessors, and employees, officers, and directors, (5) PRRS, its affiliates, predecessors, and employees, officers, and directors, and (6) all persons who properly execute and file a timely request for exclusion from the Federal Class.

b.  **Texas Claims Subclass ("Texas Subclass")**:

i.   All non-excluded persons or entities, being citizens of Texas who have received a notice from PCA, PSA, and/or PRRS and paid any fine to PCA, PSA, and/or PRRS.

ii.  Excluded from the Texas Subclass are: (1) persons who are not citizens of Texas, (2) agencies, departments, or instrumentalities of the United States of America, (3) the State of Texas, (4) PCA, its affiliates, predecessors, and employees, officers, and directors, (5) PSA, its affiliates, predecessors, and employees, officers, and directors, (6) PRRS, its affiliates, predecessors, and employees, officers, and directors, and (7) all persons who properly execute and file a timely request for exclusion from the Texas Subclass.

32.     Plaintiff is a member of both the Federal Class and the Texas Subclass. Putative class members may fall into either class, or both. Plaintiff Leppek and members of the Federal Class and Texas Subclass are collectively referred to as "Plaintiffs").

33.     The number of members in each class for whose benefit this action is brought is so numerous that joinder of all class members is impracticable.

34.     Members of the Federal Class and Texas Subclass are so numerous and spread out across the United States and Texas that joinder of all is impractical.

35.     PCA and PSA operate hundreds of parking facilities across the United States, where they partner with PRRS to impose and collect fines from patrons of these facilities.

36.     Millions of consumers use these facilities, and it is reasonable to assume that a significant number of PCA's and PSA's customers have been issued fines, and paid fines to PCA, PSA, and/or PRRS.

37.     PCA, PSA, and PRRS have within their possession or control records that identify all persons to whom they sent notices and from whom they collected fines. The actual number in each class can be established through discovery of PCA's, PSA's, and PRRS's books and records.

38.     Among the questions of law and fact that are common to the Federal Class members are:

a.     whether PCA, PSA, and/or PRRS are "debt collectors" under the FDCPA;[17]

b.     whether PCA, PSA, and/or PRRS may lawfully assess and collect or attempt to collect the fine on PCA's and/or PSA's behalf; and

c.     whether the parking notice scheme violates the FDCPA.

39.     The questions of law and fact that are common to the Texas Subclass are:

a.     whether PCA, PSA, and/or PRRS on PCA's and/or PSA's behalf may lawfully assess and collect or attempt to collect the fine;

b.     whether the parking notice scheme is a "debt collection" and PCA, PSA, and/or PRRS are "debt collectors" under the TFDCPA;

c.     whether the parking notice scheme violates the TFDCPA;

---

[17] PRRS expressly admits that it is a debt collector. *See* Ex. L (Second Kelley Letter).

      d.      whether PCA's, PSA's, and/or PRRS's claim to, and collection of, a fine as a debt, was and continues to be done without a surety bond on file with the Texas secretary of state as required under the TFDCPA;

      e.      whether PCA's, PSA's, and/or PRRS's claim to, and collection of, a fine, including the statements in the form notice, constitutes an impermissible threat or coercion under the TFDCPA;

      f.      whether PCA's, PSA's, and/or PRRS's claim to, and collection of, a fine is an "unconscionable action" under the TFDCPA;

      g.      whether PCA's, PSA's, and/or PRRS's claim to, and collection of, a fine, including the statements in the form notice, is a false, misleading, or a deceptive act or practice under the TFDCPA; and

      h.      whether the collection, and attempted collection, of the fine by PCA, PSA, and/or PRRS was committed intentionally.

40.     Plaintiff's claims are typical of the members of the Federal Class and Texas Subclass because he has received notice from PRRS, pursuant to its relationship with PCA and/or PSA, attempting to collect a fine, and he has paid the fine. Plaintiff seeks no relief that is antagonistic or adverse to other members of the two classes.

41.     Plaintiff is committed to the vigorous prosecution of this action and has retained counsel who are competent in the prosecutions of class actions, FDCPA claims and complex litigation. Accordingly, Plaintiff will fairly and adequately protect and represent the interests of each class member.

42.     Questions of law or fact that are common to the members of the classes are substantially similar and predominate over any questions affecting only individual class members,

and a class action is the only appropriate method for the fair and efficient adjudication of this controversy for these reasons:

    a.    The individual fines and any ancillary amounts of damages involved are too small to justify individual actions,

    b.    The costs of individual actions would unreasonably consume the amounts that would be recovered,

    c.    Individual actions would unduly burden the judicial system, and

    d.    Individual actions brought by class members would create a risk of inconsistent results and unnecessarily duplicate this litigation.

43.    This district represents the most desirable forum for the litigation of the claims of the class as a substantial portion of the acts giving rise to the claims of the classes occurred in this district.

44.    Plaintiff does not anticipate any difficulty in managing this action because the evidence proving PCA's, PSA's, and PRRS's scheme is easily ascertainable through discovery. The identities of the class members are known by PCA, PSA, and PRRS, damages can easily be calculated from PCA's, PSA's, and PRRS's records, and any statutory or punitive damages will be decided by this Court and a jury.

## VI. STATEMENT OF FACTS

**A. PCA's, PSA's, and PRRS's systems are designed to generate fines.**

45.    At parking lots owned or operated by PCA, PSA, and/or PRRS, individuals may park their cars for a particular amount of time, in exchange for a pre-set fee. In Plaintiff Leppek's case, the parking rate at the PCA and/or PSA parking lot at which he parked, located at 319 N. Akard Street, Dallas, Texas (the "Akard Street Lot"), was $9, plus a $1.40 transaction fee, for one hour fourteen minutes of parking time on October 24, 2024.

46.     On information and belief, many PCA and/or PSA parking facilities, like the Akard Street Lot, are unattended for long periods of time (if attended at all). There are also no entry or exit gates at the Akard Street Lot, and any individuals wanting to park at the Akard Street Lot must pay for parking online by scanning a QR code.[18] Customers enter their license plate number and select the amount of time they intend to stay, and provide their credit card information to pay the fare for the corresponding time.

47.     In Plaintiff Leppek's case, he used the QR code to download and register for an app to pay the $9 fare and $1.40 convenience fee online for his hour-long stay. There were no posted rates for the Akard Street Lot.

48.     The fine was not disclosed through the purchase process or identified anywhere on the parking receipt.[19] On information and belief, the nondisclosure of the fines for unpaid parking fares is an intentional business strategy used by PCA, PSA, and/or PRRS to later coerce the fine from an individual and generate higher returns for themselves.

49.     PRRS, as per its relationship with PCA and/or PSA, installs a video monitoring system which tracks and documents a vehicle's license plate. As shown in Plaintiff's attached payment receipt, PRRS's system takes a picture of an individual's vehicle, with a time stamp for entry and exit in calculating the unpaid fare and fine.[20] In Plaintiff Leppek's case, rather than charge Plaintiff the posted fare corresponding with the actual length of his stay (here, an additional few dollars), **Plaintiff was fined $87 for overstaying his time by just 22 minutes, in addition to being required to pay a $5 "convenience fee" to pay the fine.**

---

[18] A QR code (Quick Response) is a type of bar code consisting of black squares arranged on a background in a square grid, which can be scanned by a smartphone to access a specific webpage or digital payment application.

[19] Ex. M (Parking Receipt).

[20] *See* Ex. N (Fine Payment Receipt).

50.     Plaintiff Leppek paid the $87 fine and required $5 convenience fee because of and in reliance on Defendants' claim that the money was owed, and because of and in reliance on Defendants' threats of consequences for non-payment. Namely, Plaintiff Leppek did not want to risk a negative impact on his credit score and credit history if PCA, PSA, and/or PRRS reported the alleged debt to a credit bureau, and he did not want to risk having his personal vehicle towed or booted. Plaintiff Leppek paid it with personal funds using his personal credit card.

51.     PCA's and/or PSA's system is designed to extract higher payments from customers, resulting in higher returns for them and parking facility owners. A simple hypothetical example is shown in the following table. The table calculates the estimated revenue for a facility that has 3,000 daily visitors under two scenarios: a scenario with a normal entry gate system that requires 100% compliance, and the second scenario using PCA's and/or PSA's video monitoring system, assuming a 20% nonpayment rate and a 90% fine collection rate. Under this basic example, **PCA's and/or PSA's system generates 188% of the revenue from a traditional gate system, driven by fines**.

| | **Traditional Entry Gate System** | **PCA/PSA Automated System** |
|---|---|---|
| Cars Per Day | 3,000 | 3,000 |
| Paying Customers | 3,000 | 2,400 |
| Non-Paying Customers (20%) | 0 | 600 |
| Revenue for $15 Parking Charge | $45,000 | $36,000 |
| Number of Customers Subject to Fine of $90 | 0 | 600 |
| Number of Customers who Pay Fine (90%) | 0 | 540 |
| Fine Revenue | 0 | $48,600 |

| Total Revenue | $45,000 | $84,600 |
|---|---|---|

52.     On information and belief, the parking notice scheme, including the failure to post the amount and/or assessment of a fine in PCA-, PSA-, and/or PRRS-managed parking facilities, is a design that PCA, PSA, and PRRS know induces individuals to park their vehicles in the parking facility. The design of this system, including the act of sending threatening parking violation notices to consumers afterward, including ones authored by attorneys, is intentional and was created for a specific goal: intimidating customers to extract unlawful fines.

53.     PCA's, PSA's, and/or PRRS's system intentionally encourages minor technical nonpayment or underpayments of parking fees such that a large, arbitrary and unauthorized fine can be assessed and collected from a significant portion of its customers. However, even in the instance where a customer intentionally does not pay a posted parking rate, that customer is still not liable to PCA, PSA, and/or PRRS for any arbitrary fine they choose to levy in addition to a legitimate posted parking fee.

**B. PCA's, PSA's, and PRRS's collection of the fine intimidates consumers into paying inflated amounts.**

54.     PCA, PSA, and/or PRRS sends individuals who fail to pay for parking a form Notice of Non-Compliance through the U.S. mail. The clear goal of the notice is to inflate any amounts owed and intimidate consumers into paying these inflated amounts by threatening actions PCA, PSA, and/or PRRS have no lawful authority to take.

55.     The notice claims that Plaintiff Leppek committed a violation by exceeding the allotted time for his parking fare of $9 (which he already paid), and includes a fine of $87—**fining Plaintiff Leppek over 960% of the parking fare he paid for having exited the lot only 22 minutes after expiration of his allotted parking time.** PRRS cannot lawfully assess a fine on

behalf of a PCA and/or PSA, and each of the notices sent to individuals constitutes an unlawful and unconscionable act.

56.    Plaintiff Leppek also had to pay a $5 convenience fee to pay the fine.[21]

57.    The form notice intimidates individuals into paying the fine by informing them that failure to pay within 30 days will result in their account being assigned to a debt collector, and further threatened that the vehicle could be towed or booted and the owner would be liable for additional fees and costs.[22] Outrageously, the form notice further purports to inform customers that by entering the PCA/PSA parking lot, they agreed to binding arbitration with PRRS and waived their right to a jury trial and their right to a class action and/or class arbitration. Of course, customers did no such thing by simply parking their car in a lot. These threats imply authority that PCA, PSA and/or PRRS simply do not have. PCA, PSA, and/or PRRS cannot boot a consumer's vehicle nor tow a consumer's vehicle for failing to pay the inflated and illegal fine nor can they threaten to add even more costs and fees on top of the already outrageous $87 fine. Nor can they unilaterally waive a consumer's right to a jury trial, class action, and/or class arbitration.

58.    The form notices further improperly intimidate individuals into paying the fine by implying that a licensed attorney will enforce the violation against the consumer. After receiving the initial notice, Plaintiff received several form notice letters on letterhead from "Daniel B. Kelly Attorney at Law, LLC."[23]

59.    In addition, the form notice falsely represents PRRS's role in collecting the fine. The initial notice identifies PPRS as the issuer or creditor of the fine, and states that the account

---

[21] Ex. M (Payment Receipt).
[22] In Defendants' subsequent letters they further state that "If you choose not to pay this notice, our firm will determine what further action to take. Further action could include the parking company booting and/or towing your vehicle where the law allows." Ex. L (Second Kelley Letter).
[23] Exs. K & L (Kelley Notices).

will be considered in default and assigned to a debt collector within 30 days, while **failing to disclose that PRRS is that debt collector**. Indeed, it is not until the **third** form notice to consumers that PRRS expressly discloses that "this is a communication from a debt collector. This is an attempt to collect a debt."[24] PRRS's failure to disclose itself as a debt collector, and its attempt to collect a debt via its illegal notices, is a flagrant violation of the FDCPA and TFDCPA.

60.    What is more, all of the conduct by PCA, PSA, and/or PRRS, as described above, was done without a surety bond on file with the Texas Secretary of State, as required by Texas Finance Code § 392.101.

61.    This is not the first time PRRS and Daniel B. Kelley have come under scrutiny for PRRS's deceptive and unfair practices. In fall 2023, the Colorado Attorney General's office sanctioned PRRS "after an investigation found the Aurora-based company illegally collected or attempted to collect on fines for parking that was already paid for or were incurred by another vehicle owner."[25] According to the Colorado Attorney General, "Under the terms of the agreement [PRRS] need[s] to change their practices. They are on notice that if they don't change their practices, we are watching."[26] Notwithstanding this warning, PRRS continues to engage in illegal behavior.

62.    The parking notice scheme is unlawful because it allows PCA, PSA, and PRRS to inflate any potential debt (unpaid parking) by orders of magnitude without any authority to do so, and tricks and intimidates individuals into paying the inflated fine by both assessing the fine,

---

[24] Ex. L (Second Kelley Letter).
[25] Ex. O (*Attorney General Phil Weiser announces settlement after parking company illegally charged, collected fines from hundreds of consumers*, COLORADO ATTORNEY GENERAL (Aug. 30, 2023), https://coag.gov/press-releases/attorney-general-phil-weiser-announces-settlement-after-parking-company-illegally-charged-collected-fines-from-hundreds-of-consumers/).
[26] *Id.*

leading consumers to believe they owe the fine, by threatening towing and booting, and by threatening fines or legal action that PCA, PSA, and PRRS have no legal authority to undertake.

## VII. CAUSES OF ACTION

### A. Count One: Violation of the FDCPA

63.     Plaintiffs incorporate the above allegations.

64.     This claim is asserted against PCA, PSA, and PRRS.

65.     PCA and PSA are a "debt collectors" under the FDCPA, 15 U.S.C. § 1692a(6) because PCA and PSA, through PRRS, mail notices through the U.S. mail, and thereby uses "mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

66.     PRRS admits that it is a debt collector under the FDCPA.[27] PRRS is in fact a "debt collector" under the FDCPA, 15 U.S.C. § 1692a(6), because PRRS mails notices through the U.S. mail, and thereby "uses mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

67.     PCA, PSA, and PRRS have violated provisions of the FDCPA which prohibit:

a.     The "false representation of ... the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The parking notice falsely represents that (1) PCA, PSA, and/or PRRS is legally authorized to impose a fine, and (2) implies that the inflated fine is something that must be paid.

b.     The "representation or implication that nonpayment of any debt will result in . . . the seizure . . . of any property . . ." *Id.* § 1692e(4). In violation of this provision, PCA, PSA, and/or PRRS's form notice falsely states that an individual's car may be booted or towed for failure to pay the fine, when PCA, PSA, and/or PRRS has no authority to do so.

---

[27] Ex. L (Second Kelley Letter).

c.  The "threat to take any action that cannot legally be taken or that is not intended to be taken." *Id.* § 1692e(5). The form notice claims that failure to pay the fine may result in dedicated collection or referral to an attorney. PCA, PSA, and/or PRRS cannot legally assess a fine, thus any threat regarding nonpayment violates this provision.

d.  The use of "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.* § 1692e(10). The fact the notice claims it can assess a fine for a violation is deceptive because a private party cannot assess a fine. The parking notice falsely implies that PCA, PSA, and/or PRRS possess power they do not have, and/or intend to take actions they cannot take or do not intend to take.

e.  Failing to disclose in the initial communication with the consumer that the communication is from a debt collector who is attempting to collect a debt, and that information obtained will be used for that purpose. *Id.* § 1692e(11).

f.  The use of "unfair or unconscionable means to collect or attempt to collect any debt," including the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). The fine (that is contained in each of the form notices sent by PCA, PSA, and/or PRRS) is a "fee" under this provision, as is the $5 convenience fee that consumers must pay to pay the fine, and thus PCA, PSA, and/or PRRS has systematically and repeatedly breached this provision and illegally collected such monies.

g.  Threats "to take any nonjudicial action to effect dispossession or disablement of property if—(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." *Id.* § 1692f(6). The notices include the threat that the "vehicle may be subject to towing or booting," and similar threats, which PCA, PSA, and/or PRRS had no right to do, or, on information and belief, an intention to do.

68.     PCA's, PSA's, and PRRS's actions were intentional and did not result from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

69.     PCA's, PSA's, and PRRS's actions have proximately caused direct injury to Plaintiff and to the numerous members of the Federal Class, consisting of the fine and any ancillary

non-disclosed fees or costs. Plaintiff and the Federal Class are also entitled to statutory damages under the FDCPA.

### B. Count Two: Violation of TFDCPA

70.    Plaintiffs incorporate the above allegations.

71.    This claim is asserted against PCA, PSA, and PRRS.

72.    Each Plaintiff is a "consumer" with a "consumer debt" under the TFDCPA because the parking cost and associated fine is "an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(1)–(2).

73.    PCA and PSA are "debt collectors" involved in "debt collection" under the TFDCPA, because PCA's and PSA's notices constitute "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5)–(6).

74.    PRRS is a "debt collector" involved in "debt collection" under the TFDCPA, because PRRS's notices constitute "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due a creditor." *Id.* § 392.001(5)–(6).

75.    PCA, PSA, and PRRS have violated provisions of the TFDCPA that prohibit:

a.    engaging in debt collection without obtaining a surety bond from a surety companied authorized to do business in Texas and filing a copy of that bond with the secretary of state. *Id.* § 392.101. PCA, PSA, and PRRS violate this provision by trying to collect debts without having obtained or filed the surety bond, as required by the statute, at any point relevant to this complaint and up to its filing.

b.    threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings; or threatening to take an action prohibited by law. *Id.* § 392.301(7)–(8). PCA, PSA, and PRRS violate these provisions by illegally threatening that a consumer's vehicle will be towed or booted, or the consumer may incur additional fees, future ticketing, referred to

a dedicated collection agency, or incur other legal action. PCA, PSA, and PRRS, as private companies, have no authority to find and tow or boot a consumer's vehicle, nor refer the fine to a collection agency. Thus, Plaintiff's notice, and each of the notices sent to the Texas Subclass, each represent a violation of the Texas Finance Code.

c. The use of "unfair or unconscionable means" to collect or attempt to "collect interest or a charge, fee, or expense incidental to the obligation" that is not expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." *Id.* § 392.303(a)(2). The fine (that is allegedly imposed in each of the notices sent by PCA, PSA, and/or PRRS) is a "fee" under this provision, as is the $5 convenience fee that consumers must pay to pay the fine, and thus PCA, PSA, and/or PRRS has systematically and repeatedly breached this provision and illegally collected such monies.

d. Misrepresenting the character, extent, or amount of a consumer debt. *Id.* § 392.304(a)(8). Notice allegedly imposing a fine falsely represents that (1) PCA, PSA, and/or PRRS is legally authorized to impose a fine, and (2) implies that the inflated fine is something that must be paid.

76.    PCA, PSA, and PRRS's actions were not the result of a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error.

77.    PCA, PSA, and PRRS's actions have proximately caused direct injury to Plaintiffs and to the Texas Subclass, consisting of the fine and any undisclosed ancillary fees or costs. Plaintiffs and the Texas Subclass are also entitled to statutory damages.

### C. Count Three: Violation of DTPA

78.    Plaintiffs incorporate the above allegations.

79.    This claim is asserted against PCA, PSA, and PRRS.

80.    In Texas, the DTPA allows Plaintiffs to bring an action against any person who uses or employs false, misleading, or deceptive acts or practices. Tex. Bus. & Com. Code § 17.50(a)(1); *Miller v. Keyser*, 90 S.W.3d 712, 715 (Tex. 2002). PCA, PSA, and PRRS are considered a "person" under the DTPA. *Id.* § 17.45(3).

81.     Plaintiff and members of the Texas Subclass are considered "consumers" under the DTPA because they are individuals who sought or acquired goods or services by purchase or lease. Tex. Bus. & Com. Code § 17.45(4).

82.     PCA's, PSA's, and PRRS's notice and parking notice scheme, whereby they threaten fines, booting, and/or towing, further legal action, or reporting a debt to one or more credit bureaus is an intentional practice that is designed to take advantage of consumers' lack of knowledge to a grossly unfair degree.

83.     PCA's, PSA's, and PRRS's parking notice scheme constitutes an "unconscionable action" under the DTPA. Each mailed notice is a separate act, and thus, PCA, PSA, and PRRS have violated the DTPA numerous times. *Id.* §§ 17.45(5), & 17.50(a)(3). In addition, PCA's, PSA's, and PRRS's actions of actually charging and collecting the fines and any non-posted ancillary fees, like the $5 convenience fee to pay the fine, are additional DTPA violations.

84.     PCA's, PSA's, and PRRS's violations of the TFDCPA, set forth above, also constitute violations of the DTPA. Tex. Fin. Code § 392.404.

85.      Further, PCA, PSA, and PRRS have violated the DTPA through the following false, misleading, and deceptive acts:

   a. causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services. Tex. Bus. & Com. Code § 17.46(2). The fact the notice assesses a fine for a violation is confusing because a private party cannot assess a violation. The notice, allegedly imposing a fine, falsely implies that PCA, PSA, and PRRS have authority they do not have—i.e., that they are acting under or have sponsorship of police powers of the state. PCA, PSA, and PRRS have no legal authority to demand payment of a fine that they have no legal basis to impose.

   b. representing that an agreement confers or involves rights, remedies, or obligations which they do not have or involve, or which are prohibited by law. *Id.* § 17.46(b)(12). With its form notice, PCA, PSA, and PRRS have represented to Plaintiff and the Texas Subclass that failing to pay for parking grants PCA, PSA, and/or PRRS the right to levy the fine, grants PCA, PSA, and/or PRRS the right to seize a consumer's vehicle through booting or towing, and allows legal action to collect the fine.

86.     Defendants have caused and proximately caused direct injury to Plaintiff and the Texas Subclass, who have paid the fine or any non-posted ancillary fees or costs because of and in reliance on the Defendants' claim that money was owed, and because of and in reliance on Defendants' threats of consequences for non-payment.

87.     Because PCA, PSA, and PRRS intentionally perpetrated the parking notice scheme, Plaintiff and the Texas Subclass are entitled to recover treble damages. *Id.* § 17.50(b)(1).

### D. Count Four: Injunctive Relief

88.     Plaintiffs incorporate the above allegations.

89.     This claim is asserted against PCA, PSA, and PRRS.

90.     Plaintiff moves for injunctive relief to prevent PCA, PSA, and PRRS from perpetrating the parking notice scheme. Plaintiff requests a declaration and permanent injunction from the Court requiring PCA, PSA, and PRRS to eliminate the parking notice scheme altogether.

91.     PCA's, PSA's, and PRRS's actions of mailing parking notices attempting to collect, and collecting, fines apply generally to the Texas Subclass, such that injunctive relief is appropriate. PCA's, PSA's, and PRRS's parking notice scheme is an intentional business practice that applies to the Texas Subclass. Specific to the Texas Subclass, the DTPA expressly authorizes injunctive relief. *See* Tex. Bus. & Com. Code § 17.50(b)(2). In addition, the TFDCPA also specifically authorizes injunctive relief.  Tex. Fin. Code § 392.403(a)(1).

92.     Plaintiff has suffered an irreparable injury, including lost time and mental anguish from PCA's, PSA's, and PRRS's illegal threats and simple monetary damages are inadequate to compensate for this injury.

93.     Balancing the hardships between Plaintiff on the one hand, and PCA, PSA, and PRRS on the other, a remedy in equity is warranted to prevent PCA, PSA, and PRRS from continuing to illegally extract fines from its consumers. The public interest would not be disserved

by a permanent injunction, because without this equitable relief, PCA, PSA, and PRRS would be free to continue extracting illegal fines after this lawsuit

94.    Thus, Plaintiff requests a declaration from this Court and permanent injunctive relief to end PCA's, PSA's and PRRS's illegal parking notice scheme. Specifically, Plaintiff requests the following:

a.  Prohibit PCA, PSA, and/or PRRS from attempting to collect any fines without it having a surety bond on file with the Texas Secretary of State;

b.  Require PCA, PSA, and/or PRRS to clearly post parking rates at all facilities for all times of the day;

c.  Prevent PCA, PSA, and/or PRRS from attempting to charge or from collecting fees or other monies which exceed the posted parking rate; and

d.  Prevent PCA, PSA, and/or PRRS from threatening to tow vehicles, boot vehicles, refer consumers to collection agencies, levy additional fines or charges, or take any other actions in violation of the TFDCPA.

## VIII. DEMAND FOR JURY TRIAL

95.    Plaintiff hereby requests a trial by jury on all issues triable by right to a jury.

## IX. RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays for the following relief:

(a)  An order certifying this case to proceed as a class action, designating Plaintiff as the Federal Class and Texas Subclass representative, and designating the undersigned as counsel for each class;

(b)  A declaration and injunctive relief altering or suspending PCA's, PSA's, and PRRS's parking notice scheme;

(c)  actual damages;

(d)    statutory damages;

(e)    exemplary and/or punitive damages;

(f)    reasonable and necessary attorneys' fees;

(g)    prejudgment and post-judgment interest;

(h)    court costs; and

(i)    general relief.


Dated: March 27, 2025                              Respectfully submitted,

W. Mark Lanier                                     By: */s/ Daniella P. Main*
mark.lanier@lanierlawfirm.com                      Craig A. Haynes
Texas Bar No. 11934600                             Texas Bar No. 09284020
Kevin P. Parker                                    craig.haynes@vhh.law
kevin.parker@lanierlawfirm.com                     Robert C. Vartabedian
Texas Bar No. 15494020                             Texas Bar No. 24053534
Alex J. Brown                                      rob.vartabedian@vhh.law
alex.brown@lanierlawfirm.com                       Daniella P. Main
Texas Bar No. 24026964                             Texas Bar No. 24120235
Alfred Mackenzie                                   daniella.main@vhh.law
alfred.mackenzie@lanierlawfirm.com                 VARTABEDIAN HESTER & HAYNES LLP
Texas Bar No. 12761550                             2200 Ross Avenue, Suite 4600E
THE LANIER LAW FIRM, P.C.                           Dallas, TX 75201
10940 W. Sam Houston Pkwy N, Suite 100             Tel.: (469) 654-1632
Houston, TX 77064
Tel.: (713) 659-5200                               *Attorneys for Plaintiff*